## THE BLAIR TOWN LOT AND LAND CO. v. WALKER.

1. **Equitable Jurisdiction: COMPULSORY REFERENCE.** Where a contract between the parties has been established or admitted, and there remains thereunder a series of calculations which are necessary to the establishment of the rights of the parties, it is within the province of the court to order a compulsory reference. BECK, Ch. J., *dissenting.*

2. **Contract: CORPORATION.** A contract between the officers of a corporation, by which such officers were to derive advantage or profit from their positions, by purchases made nominally for the company but really for themselves, is void as against the other stockholders.

*Appeal from Linn District Court.*

THURSDAY, MARCH 20.

ACTION to recover certain moneys received by the defendant as assistant treasurer and general agent of the Iowa Railroad Contracting Company, which it is alleged he has converted to his own use, and it is alleged the claim has been assigned to the plaintiff. After issue had been joined the court, upon plaintiff's motion and against defendant's objection, sent the

case to a referee, who made report of the evidence, his findings of fact and law, and the court rendered judgment thereon for the plaintiff.    The defendant appeals.

*Preston & Son* and *Boal & Jackson*, for appellant.

*I. N. Kidder* and *E. S. Bailey*, for appellee.

SEEVERS, J.—I.    It is objected that the court did not have the power and authority to refer this cause against the objections of the defendant.    A determination of this question requires a full statement of the pleadings.    The petition seeks to recover of the defendant certain money intrusted to him in 1863, 1865, 1868 and 1869, as assistant treasurer and general agent of the Iowa Railroad Contracting Company, for which he had failed and refused to account.

1. EQUITABLE jurisdiction: compulsory reference.

The answer admitted the receipt of the money, but denied any indebtedness therefor, and it is averred "that the Iowa Railroad Contracting Company has credit for each of said sums for the full amount thereof; and by way of cross-claim against the said plaintiff this defendant claims the sum of one hundred and eighty-nine thousand one hundred and forty dollars, which he alleges to be due him from said plaintiff, and for cause of such claim states that the Iowa Railroad Contracting Company and the plaintiff are two corporations, largely if not entirely composed of the same persons, and interested in the same property; that the Iowa Railroad Contracting Company built a portion of the Cedar Rapids & Missouri River Road from Cedar Rapids to the Missouri River; that John I. Blair was the president of said contracting company; that said Blair, as such president, for and on behalf of said contracting company, entered into a verbal contract with this defendant whereby this defendant was to purchase and procure donations of lands (the said Blair to furnish the money to pay for all purchases so made) along the line of said railroad—this defendant to take the title to all of said

lands in the name of said Blair, in trust and for the use of said contracting company; said lands to be laid out into town lots, when deemed advisable, and this defendant was to take charge of selling said town lots and lands, and have the general management of said business; said Blair, as president, agreeing, in behalf of said contracting company, to pay this defendant a reasonable per centage for all sales of town lots so procured under said agreement, and further agreeing to let defendant have a one-half interest in all lands so purchased and not laid out into lots, after deducting purchase money and interest thereon, at the rate of seven per cent, and taxes on the same, or half interest in the profits arising thereon. In pursuance of said agreement defendant examined the country along the line of said road, procured donations and purchased a large quantity of land—the exact amount defendant is unable to state." It is then stated that a portion of the lands so purchased were laid out into town lots, and the same sold for three hundred and fifty-eight thousand five hundred and twelve dollars and · four cents, "for which this defendant is entitled to ten per cent commission, amounting to the sum of thirty-five thousand eight hundred and fifty one dollars and twenty-one cents; that the moneys claimed in plaintiff's petition, to-wit: six thousand two hundred and fifty-two dollars and twenty-nine cents, received by this defendant, were credited to said contracting company, to apply on his percentage on account of the sale of the town lots aforesaid." It is also averred that in July, 1871, the lands remaining unsold, which had not been laid out into town lots, amounting to fifteen thousand three hundred and nineteen and eighty-eight one-hundredth acres, were conveyed to plaintiff, and that defendant was "entitled to a one-half interest in the same, or one-half the profits of said purchase, after deducting costs, taxes and interest as aforesaid."

It is further averred "that at the time said Blair conveyed and transferred said lands to said plaintiff, as aforesaid, the

plaintiff had full notice of the interest of this defendant in the same, and of the percentage due defendant on account of the sales aforesaid; and plaintiff then undertook and agreed to assume and account to this defendant for his interest in said lands, and also for all moneys due him on account of the sales made as aforesaid, and to hold said Blair and said contracting company harmless from liability to this defendant on account of his interest therein."

It is averred, as a further cause of such cross-claim, that the contract for the purchase of the lands was made with John I. Blair, as we understand, in his individual capacity. The terms and conditions of the contract are the same as above stated, and the defendant makes the same claim thereunder as aforesaid.

The defendant prays relief as follows: "Wherefore, defendant says that by reason of the premises aforesaid he is entitled to an accounting from said plaintiff for the town lots sold since the 24th day of July, 1871, and that defendant is entitled upon said accounting to one-half the profits arising from the sale of such lands and lots, after deducting the costs, interest and taxes," and judgment is asked against the plaintiff for one hundred and eighty-nine thousand one hundred and forty dollars.

In a further pleading, and "by way of further, more specific and other cross-claim against plaintiff," the defendant states that he entered into a contract with John I. Blair for himself only, and that said Blair, for himself and defendant, made the contract which is set out, and the same is substantially, in other respects, like that above stated, so far as the question now under consideration is concerned.

The plaintiff replied to the pleadings filed by defendant, and denied the several matters therein stated, or alleged other things in avoidance thereof. Such being the issue, did the court err in referring the cause?

If, under the pleadings and issues joined, the cause or causes of action, either under the petition or answer and cross-

petition, were cognizable in a court of equity, or triable therein under the established chancery practice, then the court did not err in referring the whole of the causes of action against the objection of the defendant. For it was not objected below or here that a portion of the issues only was triable in chancery, but that no portion was. The constitution provides that "the right of trial by jury shall remain inviolate," and it is provided by statute "that the court, on its own motion, when the parties do not consent, may direct a reference in either of the following cases: *First*, when the trial of an issue of fact shall require the examination of mutual accounts; or when, the account being on one side only, it shall be made to appear to the court that it is necessary that the party should be examined as a witness to prove the account. * * * * * *Second*, * * * * *. *Third*, when a question of fact shall arise in any action by equitable proceedings. * * *" Code, § 2816. Counsel for the appellant in argument say: "By the letter of this statute the reference might be made, but the courts are not free to assert and enforce the letter of the statute. In doing so they cannot mantain 'inviolate' the right of trial by jury, for 'the examination of the mutual account or accounts in which it may be desired to examine the adverse party as a witness' may become necessary in the simplest form of 'ordinary action.' * * * Hence this court has said, in *Benedict v. Hunt*, 32 Iowa, 27, * * * 'we must look into jurisdiction of courts of equity in matters of account.' "

Section 2816 of the Code in substance is identical with Revision, § 3090, with reference to which it was said by COLE, J., in *McMartin v. Bingham*, 27 Iowa, 234, that "our Code has specified the precise matter which was formerly of equitable cognizance, and as to which, of course, in that court, there was no right of trial by jury. * * * Where a case falls within the rules of equitable cognizance, as correctly specified by the Code, there should be no hesitation in the exercise of the power of compulsory reference."

It is admitted in the answer that the amount claimed by the plaintiff was received by the defendant, but it is claimed the same has been properly credited on certain moneys due him under the contract with Blair. The amount claimed to be due the defendant under the contract greatly exceeds the amount claimed by the plaintiff. The compensation under the contract which the defendant seeks to recover consists of certain profits which have accrued from the sales of lands and town lots, and also because of certain lands which remain unsold. Before such profits can be ascertained the purchase price of the lands must be shown, interest thereon computed, and the amount paid for taxes proved. Such amount, whatever it may be, must then be deducted from the amount received for lands and lots sold, and the profits thus ascertained. But as to the lands not sold the value thereof must be ascertained, in addition to the matters aforesaid. There exists, of course, the contingency that no profits have accrued, because the expenses, including the purchase money, may exceed the money received for lands sold, and the present value of the unsold lands.

The defendant asks that an accounting of the matters aforesaid be had. Such is unknown to a purely legal action, but it is freely granted in an equitable proceeding. Such a remedy it is the peculiar province of courts of equity to administer. This has been so since the action of account was abolished or abandoned at law, the accounting in equity having taken its place. The jurisdiction of equity, in this respect, has never been accurately defined. It is, indeed, doubtful whether it can be done. In Story's Equity Jurisprudence, § 454, it is said: "One of the most difficult questions arising under this head is to ascertain whether there are any, and, if any, what are the true boundaries of equity jurisdiction in such matters of account as are cognizable at law."

It is true no discovery is called for by the defendant, and it is equally true that his demands are not for goods sold, money had and received, or for services rendered; and unless

he can show he is entitled to some amount, as profits under the contract, the plaintiff must recover the full amount claimed.

The account or transaction out of which the profits. on the defendant's theory, have accrued, is exceedingly complicated. Conceding the contract to be established before the profits of the venture can be ascertained a series of calculations must be made.    The lands were purchased at different times; the amount paid for each parcel was not the same; the taxes paid on each tract may or may not be the same; and interest must be calculated not only on each purchase, but also, we think, on each payment of taxes.

When the contract is established, and the amount of money paid out thereunder is ascertained, there remains a series of calculations to be made before the profits can be determined. Surely such calculations, and all matters connected therewith, can be much better made and ascertained by a competent referee than by a jury of twelve persons not versed therein.

In section 457, Story's Equity Jurisprudence, it is said: "Another and more general ground has been asserted for the jurisdiction, and that is, not that there is no remedy at law, but that the remedy is more complete and adequate in equity; and, besides that, it prevents a multiplicity of suits."

An examination of the accounts introduced in evidence by the defendant satisfies us that to try this case before a jury would be a mockery.    The time required to try the case before a jury, and the fact that it can be more expeditiously done before a referee, and a correct result more nearly attained, satisfies us, under all the circumstances of the case, that the court did not err in making the reference, because the remedy is "more complete and adequate," and for that reason, if no other, equity has jurisdiction.

II.    The appellant insists that Blair furnished the money with which the lands were purchased, and that he individu-

2. CONTRACT: ally made the contract, and that the contracting
corporation.    company had no interest therein.

Blair was president and the defendant assistant treasurer

and general agent of the contracting company at the time the alleged contract was made. The defendant received all the money which came into his hands from or through Blair. The money so furnished was kept by the defendant as a common fund, and paid out for the purchase of lands or legitimate charges against the company, connected with or growing out of the construction of the road. The funds now claimed to have been furnished by Blair for the special purpose of paying for these lands were charged on the books of the company to the defendant as general agent or otherwise, and no distinct or independent account thereof kept. Any one examining the books must have come to the conclusion that all the money specified in the books belonged to the company.

When money was paid out for lands a voucher was made out in the name of the company therefor, and a receipt taken in its name for the money so paid. These vouchers were kept with others, which, it is conceded, contained legitimate charges against and payments by the company. The defendant's time, as an employe of the company, was required to perform duties he was compelled to perform under the alleged contract. Not only so, but other employes of the company performed services under the direction of the defendant in selecting and attending to said landed interests.

For the services so rendered said employes were paid by the company. We have looked in vain for any testimony showing that any difference whatever was made between said lands, the money contributed for the purpose of purchasing the same, and any other matter which legitimately belonged to the company, until long after the lands were purchased, when, according to the testimony of the defendant, Blair directed him to change the accounts, or eliminate from the same in the company's books the items in relation to the lands.

At the time the alleged contract was made, and during the time the lands were being purchased, Blair and defendant were directors in the company, and members of the executive

committee, and as such practically had charge of the construction of the road, including the location of stations and depots; and for locating the same at certain points donations of lands were exacted. At the stations so established towns were laid out and lots sold. All this being done, it is claimed, under the alleged contract.

We are satisfied that the other stockholders believed, and had reason to believe, the lands were purchased for the use and benefit of the company. Some of them so testify, and that Blair assured them such was the fact.

After a time disputes arose between them and Blair in relation to matters connected with the construction of the road, including the ownership of the lands and moneys received from the sale of portions thereof.

The conclusion is forced on us, from the matters above stated, that the defendant must have understood, during the time the lands were being purchased, that the same were purchased for the use and benefit of the company. His acts and conduct at the time, and for some time afterward, irresistibly lead to this conclusion. His explanation of the manner of keeping the accounts is that the books were regarded as temporary, and that he did not desire that certain stockholders should know he had such a contract. This is far from satisfactory, and to our minds clearly insufficient.

If wrong in this, we are unable to believe Blair and the defendant could legitimately use their position as officers and directors of the company for their personal aggrandizement, as contemplated by the contract. Without saying the same was done, they had opportunity to locate stations, if the contract were legitimate, in furtherance of their own interest, at the expense of the company. The lands were purchased in the vicinity of the road, and their value enhanced by its construction. That Blair and the defendant might properly purchase lands the same as other individuals, and advantageously use and have the benefit of their positions, and knowledge derived therefrom, as aids in making selections,

may be conceded, provided they did so openly, and with the knowledge, either express or implied, of the company or their associates. Green's Brice's Ultra Vires, 401–2.

So far from the company or the other stockholders giving their consent to Blair making the purchases for himself individually, they had just the contrary belief and expectation. Neither Blair nor the defendant could derive any advantage or benefit from purchases so made, and the contract alleged to have been made as against the company was void.

III. It is insisted that the claim or account sued on never has been assigned to the plaintiff; but we think otherwise. The testimony of Blair, certain writings executed by him, and the action of the contracting company in the passage of certain resolutions, satisfies us that the claim sued on has been assigned to, and is the property of, the plaintiff. The length of this opinion forbids a discussion of the evidence further than has been done, and no possible benefit could be derived therefrom.

AFFIRMED.

BECK, CH. J., *dissenting.*—I think the court erred in sending the case to a referee. This point I will briefly examine. The statute upon the subject of reference demanding consideration in this case is found in the following provisions of the Code:

"Section 2815. All or any of the issues in an action, whether of facts or of law, or both, may be referred upon the consent of the parties, either written or oral, in court, entered upon the record.

"Section 2816. When the parties do not consent the court may, upon motion of either, or upon its own motion, direct a reference in either of the following cases:

"1. When the trial of an issue of fact shall require the examination of mutual accounts, or when, the account being on one side only, it shall be made to appear to the court that it is necessary that the party on the other side should be examined as a witness to prove the account, in which case the

referee may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein; or—

"2.   When the taking of an account shall be necessary for the information of the court before judgment, or for carrying a judgment or order into effect; or—

"3.   When a question of fact shall arise in any action by equitable proceedings, in which case the court, in the order of reference, shall prescribe the manner in which the testimony shall be taken on the trial."

It will be observed that, without the consent of the parties, references may only be had in cases cognizable in equity. The settlement of mutual accounts, and the taking of accounts contemplated in the first and second paragraphs of section 2816, are matters, it is presumed, of which a court of chancery has jurisdiction.   It is not intimated, however, that when issues arise in actions at law involving matters of this character, they may not be referred without consent of the parties.

It is claimed by plaintiff that the issues of fact in the case required the examination of mutual accounts, and that the defendant's answer, setting up his cross-claim, presents an equitable cause of action.   Upon this ground the ruling of the court ordering the reference seems to have been made. It, therefore, demands consideration.

Let me state briefly the issue in the case.   The petition claims to recover for money received by defendant.   The receipt of the money is admitted in defendant's answer.   His liability therefor is denied on the ground that it was applied toward the payment of a sum due from plaintiff under the contract.   It is plain that the issues arising upon the petition do not require such settlement or examination of mutual accounts as to bring the case within the statute above quoted. We do not understand this is claimed by plaintiff's counsel. The issues upon the petition; therefore, require no further consideration.

The cross-petition of defendant sets up a contract with

The Blair Town Lot and Land Co. v. Walker.

another party, under which he rendered services for which he was, by the terms of the contract, to be paid a certain compensation. It is alleged that plaintiff assumed the performance of this contract. The original contract, as well as the contract of plaintiff, is denied in the answer to the cross-petition. Special defense, as that the contract is within the statute of frauds and is without consideration, is also pleaded. It is impossible to say that these issues involved the examination of mutual accounts. The plaintiff does not claim to hold any account against defendant, other than that set up in the petition, which, being admitted by the defendant, is not in issue.

The defendant's claim against plaintiff rests upon an alleged contract for services. While defendant may be said, in common language, to hold an "account" against plaintiff, we think his claim is not a matter of "account" of which equity takes cognizance. Under all contracts for services "accounts" of like character may exist. The "account" in this case may be unusually prolix, and require a long time to adjust it, but these are not grounds of equitable cognizance. The mere fact that a case involves the examination of an account, using the word in its common acceptation, will not give chancery jurisdiction thereof.

In order to understand this subject clearly, attention must be given to the doctrines and rules of equity applicable to this subject. They are familiar to the profession, and cannot be the subject of controversy. They are summarized by Justice STORY in the following language:

"So that, on the whole, it may be laid down as a general doctrine that in matters of account growing out of privity of contract courts of equity have a general jurisdiction where there are mutual accounts; and *a fortiori* where these accounts are complicated, and also where the accounts are on one side, but a discovery is sought and is material to the relief. And, on the other hand, where the accounts are all on one side, and no discovery is sought or required; and, also, where there

.is a single matter on the side of the plaintiff seeking relief, and mere set-offs on the other side, and no discovery is sought or required, in all such cases courts of equity will decline taking jurisdiction of the cause. The reason is that no peculiar remedial process or functions of a court of equity are required; and if, under such circumstances, the court were to entertain the suit, it would merely administer the same functions in the same way as a court of law would in the suit. In short, it would act as a court of law." 1 Story's Equity Jurisprudence, § 459. See, also, *McMartin v. Bingham*, 27 Iowa, 234.

It is not claimed that there are *mutual* accounts in the case, nor is a discovery claimed.

The trial may involve the examination of many items which constitute the claim of defendant. This does not give equity jurisdiction. It may involve the examination into the state of the accounts of the two contracting companies, of Blair and of plaintiff, relating to the purchase and sale of lands and lots; but defendant does not base his right to recovery upon these accounts, and plaintiff cannot claim that they are accounts against defendant. They are examined for the purpose of determining the amount of compensation defendant ought to recover under the terms of the contract. Facts disclosed therein constitute the basis of compensation in such investigation.

I reach the conclusion that the District Court erred in ordering the reference without the consent of the parties, and that the judgment of the District Court ought to be

REVERSED.