T. G. MANN, Appellant, v. WILSON & COMPANY, INC., of Kansas, Appellee.

No. 42274.

MARCH 13, 1934.

REHEARING DENIED JUNE 23, 1934.

G. F. Brooks, for appellant.

Stipp, Perry, Bannister & Starzinger, for appellee.

MITCHELL, J.—The appellant in this action has been for several years the general sales representative of Wilson & Co., the appellee. It appears that Wilson & Co. is a Kansas corporation, engaged in the meat packing business, and that it employed the appellant as its representative in the state of Iowa. His duties included soliciting orders from stores, butcher shops, bakeries, etc., where the products of the appellee could be sold or used. He solicited these orders and sent them in to the appellee company, and the company would ship the produce, usually billed to itself, and the appellant would supervise its delivery to the customers. Appellant would collect from his customers and remit to the appellee company. He had been a salesman in the same line previous to his connection with Wilson & Co. In April of 1926, when he had negotiations with Wilson & Co. leading up to his employment, their offer as to the amount of salary was not satisfactory to him, and it was then agreed between the parties that he was to receive a bonus in addition to his salary, to be based on the volume of sales on certain different products and on the number of items in orders taken. It seems that this arrangement worked satisfactorily until March 5, 1932, when he was discharged, and the appellant commenced this action in the municipal court of Des Moines, Iowa, to recover damages for the breach of his contract. The appellant has divided his petition into seven counts. The appellee company filed an answer and counterclaim, denying that it was indebted to the appellant in any amount, and claiming that the appellant was indebted to the appellee, due to his failure to account for certain collections made by him of accounts belonging to the appellee. To the answer and counterclaim the appellant filed a reply and then a motion to produce records, which motion was sustained by the court. And thereupon the appellee filed a motion to transfer to equity. The transfer to equity asked for transfer of the entire cause. To this motion to transfer, the appellant filed a resistance. Same was submitted to the court, and the court sustained the motion to transfer to equity. Under the rul-

ing and order of the court the case was transferred to equity. From said ruling the appellant has appealed to this court.

The appellant has divided his petition into seven counts. It nevertheless appears that six of the counts in the petition are for compensation, which he alleges is due him, consisting of expense money, bonuses, and a share of all profits made by the appellee company during a period of six years, under his contract of employment. As his contract of employment ceased prior to the commencement of this action, all of the claims under the contract had accrued prior to the commencement of this action, and he does not have a separate cause of action for each item of compensation to which he may be entitled, but has only a single cause of action upon the entire contract. The other count of his petition, which is a claim for damages, is based upon an allegation in said count that the appellee entered into a combine with other packing companies doing business in the territory in which the appellant represented the appellee company, whereby certain special list prices were made and agreed upon by the various packing companies, and that, due to these special prices agreed upon between the appellee company and the other packing companies, the appellant was not able to meet the competition and lost sales thereby; that the appellant had been a salesman in said territory for twenty years, selling meats and other packing company products, and had established a clientele that was of great value to him; and that, due to this agreement the appellee company entered into with the other packing companies to fix the price, he lost this clientele and suffered damage in the sum of $2,000. By an amendment to his petition he sets up the fact that the appellant is unable to state definitely when the combine was perfected, for the reason that there was a combine on different commodities at different times, such as fresh pork sausage, refinery products, and smoked goods, and that at the time of trial said times can be ascertained by the records of the tonnage of the appellant's sales, which were directly affected thereby.

Section 10947 of the 1931 Code is as follows:

"10947. Equitable issues. Where the action has been properly commenced by ordinary proceedings, either party shall have the right, by motion, to have any issue heretofore exclusively cognizable in equity tried in the manner· hereinafter prescribed in cases of equitable proceedings; and if all the issues were such, though none

were exclusively so, the defendant shall be entitled to have them all tried as in cases of equitable proceedings."

It is fundamental that a court of equity has jurisdiction to hear and determine an account, when the same consists of mutual items and when it is so complicated as that the machinery of a court of equity, because of the complicated nature of the account, is designed to give more adequate relief. This is not because no relief exists at law, but because the relief in equity is more adequate and complete.

In the case of Burt v. Harrah, Administrator, 65 Iowa 643, 22 N. W. 910, wherein an action at law was brought against an administrator on an involved account upon motion of the defendant the same was referred to a referee, pursuant to the statute which now appears as section 11521 of the 1931 Code of Iowa. Inasmuch as the propriety of such a reference depends on whether or not the case is one of equitable cognizance, this decision is in point upon the cause now at bar. In holding that such an action is in substance an accounting suit, of which equity has jurisdiction, this court says:

"It is said, however, that a compulsory reference of an action at law is a denial of the right of trial by jury, and that the statute is therefore unconstitutional, if held to apply to actions at law. It is provided by article I, section 9, of our constitution that 'the right of trial by jury shall remain inviolate.' This right of trial by jury does not obtain in cases which are of equitable cognizance. The question, then, is, has a court of chancery jurisdiction of cases like this? In McMartin v. Bingham, 27 Iowa 234, it is held that the statute now under consideration correctly specifies what was of equitable cognizance in matters of account. We think it is very clear that the claim filed and the answer thereto show that there are mutual demands between the parties which will require an examination, and in such cases the issue is one of which a court of chancery always has jurisdiction. 1 Story, Eq. Jur. section 459. It is true, as is said in Fowle v. Lawrason's Ex'r, 5 Pet. 495 [8 L. Ed. 204], that 'it cannot be admitted that a court of equity may take cognizance of every action for goods, wares, and merchandise sold and delivered, or for money advanced when partial payments have been made, or of every contract, express or implied, consisting of various items, on which sums of money have become due, and different payments have been made.' But when there is great perplexity in

the accounts between the parties, and an examination of them by a jury is impracticable, a court of chancery will exercise jurisdiction. The statement of the account in this case makes it very plain that it would be exceedingly difficult to have an intelligent trial of the issue before a jury. In Blair Town Lot & Land Co. v. Walker, 50 Iowa 376,—a case very much like this,—it was said that a trial before a jury in that case 'would be a mockery.' In this case, the great length and complicated nature of the accounts are such that it ought not to be submitted to a jury." Pages 644, 645 of 65 Iowa, 22 N. W. 910, 911.

And this court in the case of Blair Town Lot & Land Co. v. Walker, 50 Iowa 376, on page 382 said:

"The account or transaction out of which the profits, on the defendant's theory, have accrued, is exceedingly complicated. Conceding the contract to be established before the profits of the venture can be ascertained a series of calculations must be made. The lands were purchased at different times; the amount paid for each parcel was not the same; the taxes paid on each tract may or may not be the same; and interest must be calculated not only on each purchase, but also, we think, on each payment of taxes.

"When the contract is established, and the amount of money paid out thereunder is ascertained, there remains a series of calculations to be made before the profits can be determined. Surely such calculations, and all matters connected therewith, can be much better made and ascertained by a competent referee than by a jury of twelve persons not versed therein.

"In section 457, Story's Equity Jurisprudence, it is said: 'Another and more general ground has been asserted for the jurisdiction, and that is, not that there is no remedy at law, but that the remedy is more complete and adequate in equity; and, besides that, it prevents a multiplicity of suits.'

"An examination of the accounts introduced in evidence by the defendant satisfies us that to try this case before a jury would be a mockery. The time required to try the case before a jury, and the fact that it can be more expeditiously done before a referee, and a correct result more nearly attained, satisfies us, under all the circumstances of the case, that the court did not err in making the reference, because the remedy is 'more complete and adequate,' and for that reason, if no other, equity has jurisdiction."

And in 1 Corpus Juris, 619, 620, the general rule is stated as follows:

"The jurisdiction (of equity) in the case of complicated accounts is based upon the inadequacy of the legal remedy, as where there is an embarrassment in making proof, the necessity for a discovery, or the production of books and papers, or where it would be difficult, if not impossible, for a jury to unravel the numerous transactions involved, and justice could not be done except by employing the methods of investigation peculiar to courts of equity. This would seem to be the true foundation and spirit of the rule, for while the cases lay it down in general terms that mere complication of accounts confers jurisdiction and there need be no necessity for a discovery, or an entire absence of legal remedy, the complexity, if the accounts are not mutual, or if the case does not come within the peculiar class over which the court has undoubted jurisdiction, must be substantial and material. While these conditions exist, however, no other equitable element need be involved, the jurisdiction being founded upon the very necessity of the case."

Applying the law as set out in the above cases and in the quotations from Corpus Juris to the case at bar, the appellant is seeking to recover from the appellee covering a period of six years of employment. He was to receive a stipulated salary, and, in addition to that, he was to receive a bonus of one-fourth cent per pound on certified hams and bacon; one cent per pound on all certified sliced bacon sold in excess of 100 pounds weekly; one-fourth cent per pound on all boiled hams and sausages in excess of 500 pounds weekly; a bonus of 10 per cent on all profits made in plaintiff's territory as shown at the end of each fiscal year of the appellee's business, being October 31st; 20 cents each on all orders consisting of ten or more items, up to twenty orders, and 40 cents each on all orders of twenty or more items each. In addition to this, the appellant alleges that the appellee conspired, contrary to the appellant's contract, with other packers, to fix the price of packing products in the state of Iowa, and that, due to the price-fixing combine, the appellant was not able to meet the competition and lost sales, and the clientele which he had built up covering a period of twenty years in the meat business was destroyed, and that he was entitled to damages in the amount of $2,000. By amendment he states he

will prove the combine by the records of the tonnage of business done in the state of Iowa.

Thus we are confronted in this case with an accounting covering a period of six years, an accounting which would mean that every pound of sausage or boiled ham or sliced bacon sold would have to be gone over, for, under the appellant's petition, he was entitled to compensation during the period of six years upon sausage and other various items which the appellee company sold in this territory. Every single order that appellant wrote during that six-year period, every single bill of lading which was used in shipping out the merchandise sold by the appellant, every record of the appellee company covering sales in Iowa, would have to be gone over to ascertain what amount, if any, the appellant was entitled to by way of his contract for a bonus or commission upon the sale of certain merchandise. And, in addition to this, the appellant claims a 10 per cent bonus on the profits made by the appellee company during this period of time, to wit: six years, on sales made in the state of Iowa.

From all of this, it is made apparent that the appellant claims an accounting which involves an examination of the appellee company's records of sales made during a period of six years, so that his bonus might be computed in accordance with a complicated schedule, which he sets out in the petition; that all of the records of the appellee company be examined concerning the business done by the appellee company in the state of Iowa during the six-year period in question so that an accounting might be had of the appellant's share of the profits made by the appellee company, if any. A computation of the profits of course involves a computation of all expenses incidental to the appellee's conduct of its business throughout the entire state of Iowa during that six-year period. It also involves the examination of every remittance made by the appellant to the appellee during this six-year period to determine whether any of them were double remittances, and that an accounting be had of each item.

It is impossible to conceive of a more general accounting of the business of a large industry than is prayed for by the appellant in his petition in this case. He asks that the appellee company be required to account for every item of business conducted by it during the period of six years in the entire state of Iowa. Not only an accounting of the business, but the appellee company must also show

what profit, if any, was made in the state of Iowa, because the appellant claims a share of the profits. The jurisdiction of courts of equity is well established to entertain such suits for an accounting where the items involved are extremely complicated and complex, as the machinery of equity is more adequate to give complete relief than the conventional trial at law before a lay jury.

From the claims set forth in plaintiff's petition it is plain that it would be exceedingly difficult to have an intelligent trial of the issues before a jury. The length of time involved, to wit, six years, the method of figuring the bonus or commission claimed by plaintiff, to wit, so much a pound on the various items sold, and the terrific number of records that would have to be submitted, are such that the case should not be submitted to a jury. The lower court was right in its ruling upon the motion to transfer.

Judgment and decree of the lower court must be, and it is hereby, affirmed.

CLAUSSEN, C. J., and STEVENS, ANDERSON, and KINTZINGER, JJ., concur.