JAMES MITCHELL, Appellee, v. W. J. R. BECK, Appellant.

**TRIAL:** Transfer of Cause—Refusal to Transfer—State of Pleading
1 —Subsequent Condition of Record. If, at a time before any evidence has been received, the court overrules a motion to transfer from law to equity and such ruling is correct on the condition of the pleading at that time, such ruling is not rendered erroneous by subsequently introduced testimony.

**TRIAL:** Transfer of Cause—Demands at Law Met by Counterclaim
2 at Law. A claim by plaintiff for property sold, work performed and property injured, met with a counterclaim for property appropriated and, in effect, money advanced to plaintiff by defendant and unpaid, does not, *of itself*, present any matter of exclusively equitable cognizance, even though defendant alleges that he does not know the amount of his counterclaim.

**REFERENCE:** Under Statute—Duty of Court. When a motion to
3 transfer an action from· law to equity (made before any evidence is introduced) is rightly. overruled, in view of the pleadings at that time, it is not the duty of the court, on its own motion, and on account of testimony subsequently introduced, to order a reference, under Sec. 3735, Code, 1897.

**ACCOUNT:** Pleading—Stating Defendant's Credits.  A plaintiff
4 suing on an account—for instance, for goods, value of work and .for damage to property—is under no duty in his pleadings to make an accounting of items of credit for defendant.

**ACCOUNT:** Pleading—Affirmative Defense to Defendant's Credits.
5 One suing on account, and met with a claim for credits, is under no obligation to plead an affirmative defense to such credits, but may stand on a general denial.

**TRIAL:**  Transfer of Cause—Motion—False Grounds.  It does not
lie in the mouth of him whose motion to transfer from law to
equity was overruled to complain of such ruling when, in the
later stages of the trial, he himself demonstrates that the grounds
assigned by him for such transfer were false.

**TRIAL:**  Transfer of Cause—Motion—Excessive Demand.  Defend-
ant, in an action properly commenced at law, may not com-
plain of the overruling of his motion to transfer *in toto* to equity,
when plaintiff clearly had a right to have *some* of the issues tried
at law.

**EVIDENCE:**    Account — Original   Entries — Private   Memoranda.
Books of account, to be admissible as evidence, (1) must be some-
thing more than mere private memoranda, and (2) must show
either ''charges'' or ''credits.''

PRINCIPLE APPLIED:  The following, among many, was inad-
missible because a mere memorandum: ''Dec. 9, 1908.  Pig killed
on 2d, 135 pounds net.  Paying $5.30 alive, as they dress off one
third, Jim got half $5.08.''
The following, among many, was inadmissible because not show-
ing either a ''charge'' or ''credit:''  ''Feb. 4 Hay sold by Jim
at Keokuk, $1,300.  Jim reports he paid for repairs wagon $2.65,
harness repairs $1.20, 14 barrels, 95 cents, harness oil, 80 cents,
groceries, $4.50, not accounted for 90 cents.  Gave me $2.00.''

**PLEADING:**  Issue, Proof and Variance—Account—Bill of Particu-
lars.  He who, in an action on account, in law or equity, pleads
various specified items of credit, as a counterclaim or set-off to
plaintiff's demand, must stand or fall thereon.  Should he desire to
introduce *other* items, he must amend.

**APPEAL AND ERROR:**  Review—Request for Order Without Rul-
ing.  A request for an order without ruling thereon presents no
question for review on appeal.

**EVIDENCE:**  Account—Original Entries—Explanation and Correc-
tions.  A book of account, when admissible as evidence, *must
speak for itself*.  Parol evidence is inadmissible by the party offer-
ing to explain and correct—for instance, to show that the dates
are incorrect.

**TRIAL:**  Reception of Evidence—Objections—When Nature of, Ma-
terial.  When an objection to evidence is sustained, and the rul-
ing is right in fact, it is unimportant that no reason was assigned
by the objector.

APPEAL AND ERROR: Assignment of Error—Insufficiency. An assignment to the effect that the court, in an action involving accounts, erred in excluding certain *items* of account books, does not embrace the claim that the court erred in excluding the books themselves.

PLEADING: Specific Statement—Granting Requested Time to Amend—Effect. The mere act of the court in granting a pleader's request for time to amend, cannot be tortured into an order by the court that such litigant make his pleading more specific in some certain respect.

CONTINUANCE: Application—Proceeding Not Constituting. Record reviewed, and held not to constitute any request or motion for continuance.

APPEAL AND ERROR: Discretion of Lower Court—New Trial—Unsupported Argument of Appellant. A new trial will not be granted on appeal on appellant's naked assertion in argument that a certain witness in the lower court, with appellee's knowledge, fraudulently concealed his interest in the case.

APPEAL AND ERROR: Harmless Error—Refusal to Transfer from Law to Equity. If a transfer from law to equity be erroneously refused, the subsequent withdrawal of the allegations which gave right to transfer will render the error harmless.

TRIAL: Transfer of Cause—Motion—Excessive Demand.

*Appeal from Lee District Court.*—HENRY BANK, JR., Judge.

THURSDAY, FEBRUARY 17, 1916.

REHEARING DENIED WEDNESDAY, DECEMBER 13, 1916.

SUIT to recover for various items of labor and farm products furnished defendant. Defense, payment, and one in the nature of set-off or counterclaim. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*W. J. R. Beck* and *John L. Benbow,* for appellant.

*Herminghausen & Herminghausen,* for appellee.

SALINGER, J.—Defendant moved a transfer to equity before any testimony was taken, and whether his application was rightly denied, depends, therefore, on the state of the pleadings at the time when transfer was asked.

In the first of 17 "counts," reduced to 14 by withdrawal, plaintiff claims that, during the fall of 1907, he delivered to defendant, at his request, 3/5 of 21 acres of corn raised on defendant's land in 1907, averaging 30 bushels an acre, a total of 378 bushels, reasonably worth $189, and he asks interest and costs. Differing from the first count only in date of delivery, that in the other counts the date is fixed more definitely, and in the amount claimed, a similar claim for corn is repeated in three other counts. Hay delivered is the subject of two counts; sweet potatoes use up another count. Count 18 charges that defendant, about February, 1911, while a brown mare belonging to plaintiff was heavy with foal and sick, used her, without permission, and drove her, thereby causing her death shortly, and that she was reasonably worth $150; also that, about the latter part of August, or the forepart of September, 1910, defendant drove, without permission, a bay mare of plaintiff's, while she was sick, so that she died therefrom about December, 1910, and that this mare was reasonably worth $150. Work by himself and team is the basis of six counts. The occasional statement that plaintiff is unable "to give a more definite statement as to the time and place" of the transactions pleaded is not very controlling, because the statements on that head are very definite. In an amendment compelled by court order, plaintiff avers that the transactions charged in the counts, and the requesting by plaintiff, all rest in parol. In Count 18, plaintiff says that defendant is entitled to some items of credit, as to the amount of which plaintiff is not fully advised. This is withdrawn by a second amendment to petition. The prayer of the petition is for judgment in $5,536, with interest, "less the amounts of credit that the defendant may have."

After the first amendment, defendant answered, denying

every allegation not specifically admitted. The only "admission" is that defendant made certain advances of money and property to plaintiff for which he has never been paid; that they are now due and owing him; and he prays that the plaintiff may be required to give a statement of the amount of credits to which this defendant is entitled; and that, upon ascertainment of the same, the defendant be given judgment for said amount, with interest. Dismissal is prayed. After plaintiff withdrew his statement that defendant had credits, defendant amended his answer, stating as further defense that, during the year 1907 to 1912, both inclusive, plaintiff took certain wood, hogs and other live stock and other property, and hay, corn, small grain, sweet potatoes, melons, broom corn, sorghum and other property and crops of defendant, and appropriated the same to his own use, and sold the same, and appropriated the proceeds of the sales to his own use, for which he (plaintiff) has not given the defendant credit; that defendant cannot now state the cash value of the articles so appropriated, or the amount of money received from said sale, or their proceeds, but says it was more than sufficient to pay any and all amounts defendant may have owed plaintiff, if it shall so be that defendant did owe plaintiff anything during said years; that, during these years, defendant made certain advancements to plaintiff, for which plaintiff has not given defendant proper credits to which said defendant is entitled, and defendant cannot state at this time the amounts of credits due defendant. He further states that, if it be so that plaintiff was ever in his employment, or cropped on shares with him, the property of defendant which plaintiff appropriated to his own use, or disposed of, is more than enough to pay plaintiff for any such services, and for any and all interest the plaintiff may have had in the corn, hay, small grain, broom corn, cane, melons, sweet potatoes and such other crops raised on the defendant's farms. He pleads payment in full, and denies that he is indebted to plaintiff for the sum stated, or any other sum.

Then came reply, denying all that may not have been previously admitted. Lastly, another amendment to answer, that certain groceries were bought by plaintiff and paid for by defendant during certain years, on promise of plaintiff to repay; that defendant cannot state the amount of these groceries, nor when they were furnished, but does say that the amount so furnished, whatever it may be, has never been repaid. Dismissal is once more asked.

II. We need not pass on the effect of the averment in the petition that defendants had some credits in an amount not known to plaintiff. This allegation was withdrawn. While it is true, as claimed, that withdrawn admissions may be made evidence, we are not advised that this withdrawn admission was put in evidence. If it was, that effects nothing. If, when the motion to transfer was denied, the state of the pleading justified the ruling, it could not be made erroneous by testimony later put in. And this is so of matter other than said withdrawn admission. The ruling on the motion is not made erroneous because, as is claimed, the testimony shows that the parties had relations, or that one had duties, as to and over which equity has jurisdiction; nor because of misconduct, or right to credits, which are of equitable cognizance. If a ruling is right when made, there is an end to complaint of it on appeal. It would be strange, indeed, that, if a suit be rightly retained at law against a motion to transfer, the ruling would become erroneous because the parties thereafter try matters that a court of equity can deal with. With this disposed of, we find that plaintiff's action is: (1) For the purchase price of corn delivered to defendant,—and we will assume for defendant that plaintiff was the tenant of defendant, and sold him his tenant's share; (2) for hay and sweet potatoes sold, for which we will indulge in like assumption; (3) for work by self and team, furnished defendant by plaintiff; and (4) for

*1. TRIAL: transfer of cause: refusal to transfer: state of pleading: subsequent condition of record.*

*2. TRIAL: transfer of cause: demands at law met by counterclaim at law.*

damages for misuse of defendant's horses. If this were all, there is nothing to sustain the allegations of the motion to transfer, even if we assume that same, if true, require transfer. The assertion that it was error to overrule the application to transfer to equity must rest, then, upon the defenses pleaded. These defenses are that plaintiff appropriated property of defendant to his own use, sold same and appropriated the proceeds; that for neither has he given defendant credit; that defendant cannot now say how much was appropriated, but it was more than enough to pay plaintiff, if defendant ever owed him; that he has advanced to plaintiff money and property for which payment is due and owing; that plaintiff should be required to give a statement of the amounts of credits to which defendant is entitled, and that, on the ascertainment of same, defendant have judgment for said amount, with interest; that plaintiff bought groceries for which defendant paid, on promise to repay; and that plaintiff cannot state the amount, but, whatever it may be, it has not been repaid.

That a claim for property sold and work furnished to defendant, and for an injury to plaintiff's horses, is met with a claim that plaintiff has appropriated the property of the defendant, and not paid for it; that defendant has made advances for groceries for the benefit of plaintiff, and has not been repaid, presents nothing whatever over which equity has exclusive, if any, jurisdiction. There is presented nothing more than that a plaintiff has employed eighteen distinct "counts" to make claim for property sold and work done, and injury to property not compensated for, when it could have been done in one count; and that defendant responds with something in the nature of a counterclaim, saying that property of his appropriated by plaintiff and other things for which money is due, are equal to, if they do not exceed, the amount claimed by plaintiff. Up to this point, the pleadings do not indicate that there is involved "an accounting between partners," or "an accounting involving a large number of

accounts between parties who claim to have respective interest in the respective accounts;'' and, assuming that, if they were involved, it would authorize a transfer, there appears nothing to show that such a situation exists. If, then, it was error to overrule the motion to transfer, it must be because the defendant pleads that he does not know how much is due him from the plaintiff on account of property misappropriated by plaintiff, or for groceries that he had bought for plaintiff, and paid for. Without holding that it would be material, if present, we find there is no claim in pleading that any concealment was practiced by plaintiff, and no statement why defendant cannot know how much of his property was taken. Clearly, no equity jurisdiction can be founded upon the statement of one who buys and pays for goods for another, that he does not know how much he paid. In its essence, the claim of appellant is that, if the plaintiff claims something for which the law will give a recovery, and defendant interposes a counterclaim, cognizable in law, both law controversies go to the equity docket, if the defendant will plead that he does not know how much his counterclaim is. Neither law nor reason seems to us to sustain such a claim.

Code Sec. 3570, Par. 2, cited, is, nakedly, that one may counterclaim with a cause of action in favor of the defendants, or some of them, against plaintiffs, or some of them, arising out of the contract or transactions set forth in the petition, or connected with the subject of the action.

*Munson v. Sears,* 12 Iowa 172, holds that no partnership is pleaded or proven, and disagrees with a holding of the referee to the contrary. It holds further there was a joint ownership and there is liability for an undivided half of the net annual proceeds of a farm, mill and other property. No question is made as to whether equity has jurisdiction.

*Gray v. Coan,* 23 Iowa 344, seems to be a decision that a proceeding seeking to have certain deeds canceled, for matters not appearing upon the face of the deeds, is properly brought

in equity, and page 354, especially cited, is nothing but a declaration that the petition is not to be construed most strongly against the plaintiff, but that, in the construction of the pleading for the purpose of determining its effect, its allegations shall be liberally construed, with a view to substantive justice between the parties.

In *Dickinson v. Stevenson*, 142 Iowa 567, at 570, it is held that equity will often interfere and give relief against an inequitable and unconscionable advantage taken by another, although the law on account of its fixed rates would not have afforded a remedy; that, as an illustration, the court will assume jurisdiction and grant relief because of the relations existing between the parties, such as trust or confidence. It is held that equity also imposes a higher duty than law, with regard to the disclosures of matters of which one party is ignorant, and that, as a general rule, fraud in equity includes some acts, omissions and concealments which involve a breach of either legal or equitable duty, trust or confidence, justly reposed; that equity always has jurisdiction over an accounting proceeding growing out of fiduciary relations.

Section 3735 of the Code, Par. 1, is that, when the trial of an issue of fact shall require the examination of mutual accounts, or if, when the account shall be on one side only, it shall be made to appear to the court that it is necessary that the other party should be examined as a witness to prove the account, then the referee may be directed to hear and report upon the whole issue, or upon any specific question of fact involved therein.

*Burt v. Harrah*, 65 Iowa 643, holds that the Constitution does not grant a jury trial when there is a great perplexity in the accounts between the parties, in an action to establish a claim against an estate, and an examination of the accounts by a jury is impracticable; and that such a situation is proper for equitable cognizance and for a reference.

We find nothing germane to this controversy in *West v.*

*Fry,* 134 Iowa 675. It holds that, where there is no objection to a reference of a cause for trial which does not involve a jurisdictional question, the reference cannot be questioned on appeal where the parties appeared and tried the case before a referee.

*Crookshank v. Mallory,* 2 G. Gr. 257, at 259, holds that, when a mechanic sues for his labor, and the defense sets up damages for defective work, such damages can only be used as a defense against the plaintiff's claim, and not as a ground or action in the nature of set-off, by which the defendant may recover over against him; that a set-off may be predicated upon an independent demand; and that a mere right to a reduction of plaintiff's demand, in consequence of defects in the work for which it was charged, is not a demand which can be brought in as a set-off against plaintiff's demand. And *Zugg v. Turner,* 8 Iowa 223, at 225, holds that the mere existence of distinct debts without mutual credit will not give a right of set-off in equity; that a mutual dependency or mutual trust is essential.

*Tuttle v. Bisbee,* 144 Iowa 53, is somewhat more difficult to interpret than is the dissent to it. It seems to be a holding that, where there is suit on a note which draws interest at 8 per cent, with interest upon interest if interest be not paid, and there is a counterclaim with an open account which would not draw interest until 6 months after the last item, and then at 6 per cent, then, where the case is submitted to the court and a jury is waived, and where equitable relief is prayed, there is a question presented to the court whether credit should be applied as an equitable set-off. It is said that this is permitted as to mutual credits, used in the sense that there is a trust mutually that one debt will discharge the other; a trust between two men on each side,—something different from mutual debts, to wit, mutual trust. It is pointed out that, since the enactment of the statutes allowing a set-off or counterclaim to be pleaded in actions at law, the courts of equity have usually followed the law, save

when peculiar equities intervene, and that decisions at law are rarely broken into unless some other equity intervenes which justifies the granting relief beyond the rules of law.

These constitute all the references to which our attention has been called. They do not establish that these pleadings exhibit complicated accounts; that there was a partnership, a joint venture, a fiduciary relation, a duty to account or a concealment. They seem to us to have no bearing upon whether equity has jurisdiction where a demand at law is met by a counterclaim at law, the latter being coupled with a statement that a claimant does not know the amount of his claim, and suggesting, without reason for not knowing, or reason for the request, that plaintiff be made to state how much of a claim the defendant has against him.

## 2.

We shall have occasion to refer, later, to the character of the "Error Points" and the "Brief Points." Much labor, to which we should not have been put, has ascertained that appellant complains that the controversy was not sent to a referee, and claims he "first" demanded a reference in his answer, and that this appears in lines 8 to 12 of page 10 of the abstract. Neither that page nor, so far as we have been able to find, any other page, asks a reference. The position that the court should have ordered a reference on its own motion, because, as is claimed, the testimony given justified such order, we have already commented upon. We know of no rule of procedure that requires that, when a motion to transfer is rightly overruled, the court must send the case to a referee, on account of testimony put in subsequent to such ruling. We may concede that "the agent has a duty to account to his principal, and he assumes the obligation of keeping an account of his transactions with him, and to account therefor to him;" but we challenge its applicability. There is no evidence of such a relation. And we challenge the deduction,

**3. REFERENCE: under statute: duty of court.**

as well as the existence of the premise. If there were an agency, a failure to account might justify an order compelling accounting, but the failure would not necessarily send the case to equity. We may concede that equity takes jurisdiction of a joint venture, but find that, if there ever was, there was nothing in the record when the motion to transfer was overruled, that exhibited a joint venture. We do not agree that at that time, if ever, "the issues at bar showed that a general accounting was involved, with a right of discovery and examination with relation to transactions on the part of the appellee, as agent of appellant, acting in a confidential relation."

Concede that "appellee had failed by his pleadings to make an accounting for the sums due appellant, stating in his petition that he was unable to account," and that he

4. ACCOUNT: pleading: stating defendant's credits.

"failed in his reply to plead any affirmative defense to the answer of appellant alleging certain credits, set-offs and advances," the naked fact that a plaintiff sues at law for the price of goods, value of work, and amount of damage to property, puts on him no duty to make an accounting in his pleadings, and, if

5. ACCOUNT: pleading: affirmative defense to defendant's credits.

required to do so at all, he was not bound to make affirmative defense to the credits set up as a set-off. He could content himself with a general denial in his reply.

And if we are to look into the evidence adduced to determine whether a refusal to transfer made before any evidence was taken was right, we find that any claim for equity juris-

6. TRIAL: transfer of cause: motion: false grounds.

diction, based on the inability of defendant to state his credits, is a figment of the imagination. The abstract is filled with items of credit urged by defendant. He attempts to assign error on not less than 200 exclusions of credits, with claim that books of account of his exhibit them. Every pound of hay claimed to have been taken seems to have been recorded in books. So far from being compelled to rely upon the plaintiff for

information as to advances, these books preserve a record of such items as 10 cents for envelopes, and another 10 cents for "Anti camma."

So far from being consistent in the claim that the aid of plaintiff's books was necessary, and so far from its being the fact that no inability of the plaintiff to furnish accounts and books is exhibited in the record, it appears that defendant asked an order that plaintiff produce a certain book in which plaintiff kept an account regarding the different items furnished defendant, and the time during which he was employed by him, averring that plaintiff obtained such book and still has it; that plaintiff replied that, if he ever was furnished such book, he failed to remember it, and if it came into his hands he returned it; that he has made search for same and fails to find it, and that such book is not in his possession or control; that this petition to produce book was overruled; and defendant, so far from insisting upon what it is addressed to and claims, took no exception to such ruling.

### 3.

At all events, the motion to transfer asked that "this case" be transferred, and it "tried as an equity suit"—a request to transfer the suit in its entirety. On no theory was defendant entitled to have transferred what should be conceded to be law issues. If we assume he injected equitable defenses, that could not deprive plaintiff of his right to try to a jury whether defendant owed him for corn, work, or the like, and whether he owed defendant on the claims set up by defendant. The most appellant can claim is that some issues made by him should have been transferred. This he did not ask. The court was not bound—indeed it had not power—to reframe the motion, or to rule upon what it did not present. We have often held that a general objection is not good unless the thing objected to is wholly objectionable. In analogy, if a motion asks a transfer *in toto*, and such trans-

*7. TRIAL: transfer of cause: motion: excessive demand.*

fer should not be made, the question whether a motion to transfer part is good, does not arise until a motion to transfer part only. is made.

We hold that it was not error to retain the cause on the law docket. See *Byers v. Rodabaugh*, 17 Iowa 53; *Tufts v. Norris*, 115 Iowa 250; and *Eller v. Newell*, 159 Iowa 711, at 715.

II.  "Appellant's Brief of Law, Facts and of Errors Complained of," is the substitute for "the errors relied on for reversal," plus "separately numbered propositions or points under a separate heading of each error relied on"— which the rules require. It is a remarkable effort in the way of stating "the errors relied on," and of putting "under a separate numbered heading of each error relied on, separately numbered propositions or points stated concisely, and without argument or elaboration, together with authorities relied on in support of them." If we insisted upon the rule, or any approximation to it, there would be little indeed that appellant has "raised."

Had it been the purpose to demonstrate how completely the rules of printed presentation could be departed from, its accomplishment is completely effected. There is no pretense of a distinct statement of any error relied upon for reversal. There is no attempt at a "proposition or point" grouped under a separate claim of error; no pretense of a proposition or point stated concisely and without argument or elaboration. The whole "Brief" is without logical coherence and without heading, and has no separation, except six grand divisions, having for a caption the Roman numerals I to VI, inclusive. Not one of these divisions is in "water tight" compartments. Each contains matter foreign to its "titular object," if it have one. Each jumbles various unrelated matters and repeats these at unexpected places in the division, with lordly indifference to what precedes or follows. Each grand division sees to it that it has thoroughly scattered duplicates of all that is "pepper boxed" in each of the

others.   The division with VI as a heading is the banner one.
It is content with a page and a quarter of print, and is prac-
tically confined to one law topic.   "Point" I requires nine
pages and a half.   Point II uses about four and a half pages,
and is supposed to present that there was error *in denying a
motion for continuance.*   In its bowels are claims, *inter alia,*
as to what a party must do where a reference is ordered;
that appellant was entitled to an accounting and discovery;
citations to prove that equitable set-offs have been considered
in them; that it is reversible error for a court to state an
account, instead of referring it to a master; that the court
should have made an interlocutory order of reference on its
own motion; that appellee's testimony shows he was a crop-
per, engaged in a joint venture; that the rulings below can
be explained only by the court's having assumed that appellee
was an agent; that appellee's testimony shows that appellant
had made him advancements for groceries, and had demanded
an accounting.   Point III covers a trifle over four pages.
It is supposed to complain of rulings excluding items of
credits to which appellant is entitled, which rulings are set
out by reference to pages of the abstract, only.   In it there
is complained that appellant failed to plead affirmatively in
his reply to allegations of credit made in answer; that "con-
sequently" it was error to require appellant to plead spe-
cifically any payments, credits and advancements; that appel-
lant was denied the right to amend; that plaintiff should have
been required to set forth any credits or set-offs that defend-
ant claimed against him; that there was error in refusing
and giving instructions; that the burden of proof was improp-
erly placed; that a receipt is prima-facie evidence of the
truth of what it recites, and so on; and that appellant gave
contradictory evidence; and, finally, various points on the
law of agency.   The others are as bad, or worse.   Reasonable
regard for the proper size of this opinion compels us to close
this by saying that Point IV covers 6 1/2 pages; that it also
starts with excluded credits, giving some 75 references to

pages of the abstract as a basis; that it assigns error, without more, on the fact that the court erred in directing the reporter to make marks in red lead and blue pencils on some items on defendant's books of account "discrediting these items as evidence, and for the further reason that the said marking of items confused the jury and even counsel" (the marking was done on agreement). Also, without more, that it was error to give certain numbered instructions. Point V asserts that there should have been a new trial because a witness concealed that he was an interested witness. In this, we are told over again that the court should have ordered a reference on its own motion; that appellant had rested his whole case without making an accounting; that the testimony shows he was a cropper and an agent engaged in a joint venture. The "point" concludes with the setting out of some *22 pages of testimony, dealing with all controversy on the whole trial.*

With such presentation, our task is turned into a toilsome guess as to what is to be decided. We have done far more than our duty in earnest endeavor that no substantial right of the appellant should be lost through this confusion. If we shall in any degree fail in that endeavor, it will be due to the fact that appellant has failed to perform his duty to us.

III.   Though we have considered them all, we are not justified in going into detail on the some 70 complaints of exclusions of "credits" which are urged in the "Brief Points"

8. EVIDENCE: account: original entries: private memoranda.

by a naked reference to pages of the abstract. We cannot in reason go beyond treating them by dealing with representative selections. 22 involve exclusions on the objection that they are mere memoranda.

These are fair samples:

"Dec. 9, 1908, Pig killed on 2d, 135 pounds net, Paying $5.30 alive, as they dress off one third, Jim got half $5.08."

"Dec. 4, 1910, He killed a cow, sold it at Keokuk and bought a barrel of salt. Kept $42.05, and so reported and has not paid it—Dec. 31."

"Aug. 6. Jim took 1425 hay to Keokuk at $12 per ton, $8.77."

"Aug. 19. Jim took 107 melons to Keokuk yesterday, sold 1 doz. at 2.00 and others averaged 13 1/8c, $14.04. Gave me none."

"Aug. 20. Jim took load of melons, took balance to work train and Sugar Creek picnic, 190, 297, $24.93. Paid D. F. Miller for wagon he bought from Harry Brown $17 balance kept by Jim Mitchell $7.93."

"Sept. 6. Jim sold 108 melons on the 30 Keokuk, and reported and gave me no cash $13.50."

"Jim sold 150 pounds broom corn $100 per ton. He gave me none of this $7.50."

Their exclusion was right.

## 2.

One of two items ruled out, on objection that it is no item of either charge or credit, is:

"Feb. 4. Hay sold by Jim at Keokuk, 1300. Jim reports he paid for repairs wagon $2.65 harness repairs $1.20, 14 barrels, 95c, harness oil, 80c, groceries $4.50, not accounted for 90c. Gave me $2.00."

The ruling was right.

## 3.

The following is a sample of what was excluded on the objection that it was a mere memorandum, and not an item of either credit or charge. The ruling is right.

"Sept. 10. Jim reported he sold 422 pounds broom corn at 4c on the tenth $16.88; 4 dozen melons."

4.

The claim is made that, as appellant was entitled to an accounting, he was not obliged to make his offer of proof of credits correspond to the bill of particulars he had filed. Both the premise and the deduction are faulty. He was not entitled to an accounting as in equity. If he had been, this would not warrant a variance from a specification of credits claimed by him. In either law or equity, the only method permissible, where it is sought to introduce what is not pleaded, is to amend the plea. In line with this, the court rightly excluded, on the objection that it was a mere memorandum, not an item of either credit or charge, and not an item in the bill of particulars, an item:

9. PLEADING: issue, proof and variance: account: bill of particulars.

"1910, Feb. 2, Jim sold 2,000 hay at Keokuk, paid me only $2—$10."

The following is one of 4 items rightly rejected on the objection that it is a mere memorandum and not in the bill of particulars:

"Oct. 20, Jim for old Jim cutting 137 shocks corn $6.85, Jim for 6 bu. of wheat $5.40."

The following is one of the 16 items properly excluded on the objection that it was not in the bill of particulars:

"Feb. 4, 1909.  Jim, balance 13.84; Feb. 26, Jim Mitchell gloves .75."

5.

Another complaint is this: There was offered a set of entries: "March 4, Jim $3.60; March 16, Jim 2.74; March 24, Jim 12.07." The witness thereupon said:

"This should be under March 24. I made a mistake in

the book. I am not infallible. Anyone can see that it should be March instead of February at the top of the page. If I had been like some people I would have erased the February and written March. (It was objected to and moved to have the explanation stricken out because it is incompetent, immaterial and irrelevant. If the book is relied upon as evidence it must go as it is.)'' The court said: ''When the book is received it must show for itself. If you want credit for these items the bill of particulars should be amended.''

We agree.

## 6.

**10. APPEAL AND ERROR: review: request for order without ruling.** After objection had been sustained as to entries: ''Sept. 5, Jim 80; Sept. 1 paid Jim Mitchell 1.80; Sept. 12 $1.00; Oct. 26 paid Jim Mitchell, or he retained it, $18.84; Oct. 26, 8 bushels potatoes and barrel 6.40; Oct. 27 3 K's $1.10,''—defendant asked leave ''to amend and put said items under the 14th.'' There was objection, but no ruling.

**11. EVIDENCE: account: original entries: explanation and corrections.** The following is a representative selection of complaint of refusal to permit the book entries to be explained:

''Jim took to town corn 2960, 1430, 2530, 2160, at 60. .$ 14.18
Hay 2140, 1170, 1970 at $8...................... 7.85
Jim reports he has sold 25, 42, 15, 18, 27, 30.......... 103.02
He has on hand................................. 9.00
Sold me 15 gallons, charge him balance.............. 94.20

''Witness tries to explain but court sustained motion because it is an item of account and cannot be explained. (Objection sustained.)'' . . . Witness says: ''It is simply a clerical error, at the top of one page is 'Tuesday, 13 April, 1909,' and then follows 14th, 15th, 16th, 17th, 19th, 20th and on the top of the following or opposite page is 'Wednesday, 21st April, 1907' when it should be '1909.' ''

Plaintiff objects to any corrections to the book by verbal evidence. Sustained.

We think the court did not err.

### 7.

The following is a sample of three to which plaintiff merely said that he objected: "Oct. 16, 1909. Jim sold corn at Keokuk, 20 at 55 11.00." The ruling was right. That

12. TRIAL: reception of evidence: objections: when nature of, material.

it was not more fully objected to is not material, when the objection is sustained. It is only when overruling an objection is complained of on appeal, that the nature of the objection becomes material. We do not reverse because the court ruled right without having pointed out to it why it should so rule.

### 8.

The following, which are utterly indefinite and meaningless, were excluded:

"Feb. 25, 6.50." Objected to as too indefinite.

"June 11, Jim sold calves on Saturday at Keokuk, 117, 142, 155, first lot; second lot 170, 150, at 6 1/2, $47.71. Jim gave me $32.70 and ports spent $15.01, hoeing $8.00." Object: "same item June 22." Defendant excepts.

The next is, literally, this: "August 3. Same objection as to the item June 15th, and same ruling and defendant excepts."

### 9.

The first specification is, rulings on page 60 of the abstract, lines 1 to 4. It does not appear at that place in the abstract what is objected to. The objection is an attempt to have "the answer excluded because there is no such item contained in the bill of particulars, the item there being 'cash 15.90.'" This objection was sustained. We see no error.

IV. It is urged in the "Brief" that the court erred in

excluding the account books of appellant. We find no such assignment. The only claim made in the "points" that touches the subject is not a complaint of the exclusion of the books, but of items recorded therein. The statement is:

13. APPEAL AND ERROR: assignment of error: insufficiency.

"The court erred in its rulings excluding the items of credit to which appellant was entitled on the ground that they were not set forth as items in appellant's answer and bill of particulars. The record shows that appellant was in equity and at law entitled to a general accounting from appellee, and that it was not incumbent on appellant to set forth in his answer separately the items excluded in order to introduce proof thereof in support of equitable set-offs and credits to which appellant was entitled."

Passing that, we find that, while the court expressed a doubt as to the competency of one book, and in that connection sustained an objection, it fairly appears that the books were not excluded, but that items were. In fact, the record shows that two of the books are "offered and introduced," and that they "are hereby made a part hereof by reference." It appears, further, that once, when what by possibility may be an objection to a book seems to have been sustained, the ruling was reversed, upon the statement of witness that he "had personal knowledge of transactions separate and apart from the book." What follows fairly shows that the books were not excluded, which renders unnecessary a discussion of their admissibility:

"Kept book in connection with Mitchell. Book marked from Jany., 1905, to Jany., 1909, is a blotter. Book marked Exhibit 58 is made by me as soon as I got to the office. Shows continuous dealing. Objected plaintiff. Sustained. The entries are just and true. Shows dealing between Mitchell and myself."

The witness said: "Have paid Mitchell other sums than by check, shown by Exhibit 58." (Objected to as incom-

petent, immaterial and irrelevant.) "If there is an account, it must stand for itself." (Sustained.)

Exhibit 58 offered in evidence. Book objected to because it has not been verified, as required by statute for introduction of a book account. Witness: "This is one of my books of original entry." Court: "For certain purposes the book may be admitted."

"Time book offered marked for identification as Exhibit 60. Another book marked for identification, Exhibit 61." Witness said: "At or near the time of the transactions I entered them and I believe them to be true and just." (Plaintiff objects. Sustained, "on the ground that it is a memoranda and not such a book of accounts as can be introduced in evidence.")

Another book was produced and identified as Exhibit 62. Witness: "All entries in my handwriting, made at or near of the transactions therein entered. I believe the charges to be just and true." (Objected to as incompetent, irrelevant and immaterial, not properly identified as a book of accounts, which can be introduced under Sec. 4623 of the Code, and because it is a private memoranda or diary only and self-serving.) Court: "Cannot make up my mind that it is a book of original entry. The whole thing seems to be a memorandum of what these people were doing. Sustained."

"Exhibit No. 63 is one of my books of original entry. The charges were made at or near the time of the transactions therein entered and I believe them to be just and true."

"Offered and introduced in evidence. Objected to. Court: It will be admitted under the same ruling made for Exhibit 58 and 59.

"Exhibit 63 hereby made a part hereof by reference."

There was no error.

V. In the second amendment to answer, we find the following statement, without any connection or indication of purpose, to wit:

"Through mistake defendant made certain entries in Exhibit 58, under the date of Feb. 20, 22, 23, 24, 25, 26, 27, 1909, when said entries were made on the above days in March, 1909."

Nothing more appears to be said on the subject, and the abstract exhibits no entries of that date, except these two: "Feb. 25th, Jim. Mitchell, Gloves 75c." This was objected to because there was no such item in the bill of particulars, and was sustained. "Feb. 25th, $6.50." This was objected to as too indefinite, and the objection was sustained.

We remain at loss to understand what is claimed for this plea.

VI. Appellant claims that he moved for more specific statement "of the credits," and the court refused to require appellee to set out those credits, "which he was able to state." It is said this was error because, "appellant was entitled to have a full and complete accounting from appellee upon his own allegations, and this is not affected, because there was an attempt to withdraw this allegation;" that appellee failed in his reply to plead any affirmative defense to the answer of the appellant, alleging certain credits, set-offs and advances; and that, consequently, it was error to require appellant to plead specifically any payments, credits or advancements.

14. PLEADING: specific statement: granting requested time to amend: effect.

We find nowhere in the record anything to show that appellant was required to plead anything, much less that he was required "to plead specifically any payments, credits, or advancements." We have already pointed out that appellant gained no rights because appellee failed in his reply to plead affirmative defenses to the credits, set-offs and advances pleaded in the answer of appellant. And we find nowhere in the record the making of any motion for more specific statement, except this: Immediately following the order giving time to the defendant to amend is this:

"Plaintiff filed a motion for more specific statement,

same was argued. At defendant's request he was given until
11:30 to file a pleading. Counsel for plaintiff waives the
attaching of the original or a copy of the checks set out in
the amended answer filed this day, in so far as the checks
have been exhibited to the plaintiff, 54 in number, amount
the same however of checks not alleged in the answer;'' and
this is all.

In the index under motions, we find one to transfer to
equity docket, one for new trial, and an amendment to
motion for new trial—and no other motions. The examina-
tion we have given the lengthy and confused abstract fails to
disclose any other motion.

This seems to resolve itself into a complaint that the
court gave defendant such time as he asked to file an amend-
ment to his pleading. It should not be seriously contended
that this presents a ground for reversal.

VII. In what is treated to be ''Error Point 2,'' it is
alleged that:

''The court erred in denying the motion of appellant for
continuance of the case asked by appellant
in said motion as terms for privilege granted
to appellee to amend. . . . And in failing
on its own motion to require of the appellant as to terms for
said amendment an agreement to the said continuance, and
to a reference of this case and transfer of the equitable
issues raised by appellant's answer to the equity docket.
. . . And further erred in requiring the appellant to pro-
ceed with the trial of this case at law.''

15. CONTINUANCE: application: proceeding not constituting.

As said, the index reveals no motion for continuance,
and we find none in the record beyond this: In the brief for
appellant appears a claim that plaintiff withdrew that part
of his petition which admitted that defendant had some
credits in amounts unknown to plaintiff on the sixth day of
the trial; that plaintiff had rested, and defendant had exam-
ined several witnesses; and that the defendant then insisted
''that if plaintiff is permitted to amend he should do so on

such terms as will be deemed just and equitable to the court, and fully protect the interest of the defendant, as the amendment has entirely taken the defendant by surprise." This statement was not verified. The court said that, in view of the amendment which is already in the record, and in view of the evidence already given, the court is of opinion that terms be allowed defendant, and this will be to give him time until two in the afternoon.

Upon these assignments, and upon this record, it is said it was error to deny this "motion for continuance of the case." Stripped, it is a claim that, where a plaintiff admits that the defendant had credits in an amount unknown to plaintiff, and then withdraws the allegation, after the trial has proceeded some six days, then, though the defendant can have the benefit of this withdrawn admission then and there by introducing same in evidence, and does not do so, and though he proves upon the trial that he is able to make proof of such credits as he has, that then, if the court meets this withdrawal by giving the defendant some 2 or 3 hours to amend, if so advised, instead of ordering a reference or sending the whole case to equity, this is the denial of a motion for continuance which warrants us in interfering with the discretion of the trial court in the premises in thus dealing with said amendment on part of plaintiff. ·

We are clear that there was no reversible error in this "denial of a motion for continuance of the case."

VIII.   In the so-called "Brief or Error Point V," it is said that the court "erred in overruling grounds 7, 8 and 9 (Abs. p. 134, l. 29-31) of appellant's motion for a new trial and amendment to motion for a new trial. (Abs. p. 137, l. 11 to p. 138, l. 20; p. 142, l. 7 to p. 146, l. 21). The record shows a claim that it can be shown by newly discovered evidence that the witness George Herschall Clark, who testified that he was not interested in the verdict in favor of appellee (Abs. p. 42, l. 1-5) was in fact an interested witness and that he had fraudulently concealed the interest which was

known to appellee, who represented Clark on the trial as a disinterested witness; that the verdict returned by the jury shows that the testimony of Clark was relied upon in arriving at the verdict; that he was therefore a material witness and the concealment of his interest materially affected the result of the trial. Fraud practiced on the trial by the prevailing party warrants the granting of a new trial. Code of Iowa, Sec. 3755, Par. 2, misconduct of prevailing party. Also see Sec. 4091, Par. 2.''

In argument, we are told that the witness Clark testified that he was not interested in the verdict in favor of appellee, but was in fact an interested witness, and fraudulently concealed that interest; plaintiff knew it, and he represented Clark on the trial as a disinterested witness; that the verdict shows that the testimony of Clark was relied on in arriving at the verdict, he was, therefore, a material witness, and the concealment of his interest materially affected the result of the trial; that this is fraud practiced by the prevailing party, and newly discovered evidence was not cumulative evidence. And we are cited to *White v. Nafus,* 84 Iowa 350, 354, and *Bullard v. Bullard,* 112 Iowa 423, 427, cases that hold that, on consideration of a motion for new trial, certain evidence is to be treated as not being merely cumulative. It is unquestionable that, on motion for new trial, as distinguished from a petition therefor, it is within the discretion of the trial court to grant a new trial, where the prevailing party gave or put in false testimony (*Guth v. Bell,* 153 Iowa 511, at 518), or where the prevailing party has committed perjury (*Cleslie v. Frerichs,* 95 Iowa 83) ; or where untrue testimony was put in and a witness confesses to having been mistaken in his testimony (*Pickering v. Kirkpatrick,* 32 Iowa 163, at 164). It is held, in *First Nat. Bank v. Wabash, St. L. & P. R. Co.,* 61 Iowa 700, that granting a new trial will not be disturbed, where it can be found that false testimony was introduced for the purpose of deceiving

the court, and it appears that the defeated party was surprised and unable to contradict, at the time such testimony was put in.

But all this does not prove that the witness Clark gave false testimony; that he was in fact an interested party; and that plaintiff concealed that the witness had such interest. We do not say we would disturb the refusing to grant a new trial if the witness had made that concealment. We have no occasion to go beyond holding that we find no evidence of what is charged, beyond the assertion of the appellant, and are unwilling to interfere with the discretion below upon such a record.

The judgment below must be, and is—*Affirmed.*

EVANS, C. J., LADD and GAYNOR, JJ., concur.

SUPPLEMENTAL OPINION.

WEDNESDAY, DECEMBER 13, 1916.

SALINGER, J.—I.  The major argument of appellant for his claim that we should reconsider our position on his being denied trial by the equitable method, rests upon his having alleged in answer that he had some credits due from the plaintiff which were not known to him, the defendant. We have declined heretofore to pass on the effect of this allegation, because same was withdrawn. It is now contended that we have erred, because the allegation was not withdrawn at the time when transfer to equity was moved, though withdrawn some days later. The reasoning is that we have lost sight of our declaration that the right to transfer must be tested by the state of the pleadings at the time when transfer is asked. The flaw in the reasoning is that we have nowhere held that the transfer should have been granted if this withdrawn allegation had been in the pleadings when transfer was moved. What we have said consists of two unrelated statements:

(1) The right to transfer to equity must depend on the state of the pleadings when the transfer is moved; (2) the effect of a withdrawn allegation need not be passed upon if such allegation is not put in evidence. Neither alone, nor the two together, declare that the pleadings as they were at the time the motion to transfer was made, require the sustaining of that motion. What we are in effect asked to hold now is that, if the only allegation claimed to support a transfer is withdrawn after a motion to transfer has been overruled, we should disregard the rule of harmless error, and reverse because there would be prejudicial error if an allegation which was abandoned had been retained. We must decline to do this.

17. APPEAL AND ERROR: harmless error: refusal to transfer from law to equity.

Passing this, and conceding, for the sake of argument, that, since said allegation was in the pleadings when the transfer was asked, this justified transferring something, it still remains true that the motion to transfer asked only that the entire case be transferred and tried as an equity suit, and that there were issues present which it should be conceded were law issues. If we assume that there were equitable defenses to transfer, this could not deprive plaintiff of a jury trial on whether, for instance, defendant owed plaintiff for labor done. If it be conceded that defendant had the right to have part of the case tried in equity, he did not ask for this; and, as we have before said, the court neither had the power, nor the obligation to reframe the motion, or to rule upon what the motion did not present.

18. TRIAL: transfer of cause: motion: excessive demand.

II. It is said we have reversed *Blair v. Walker,* 50 Iowa 376, and *Burt v. Harrah,* 65 Iowa 643, and have, in effect, established the rule that equity lacks jurisdiction in cases of complicated and mutual demands between parties. We think neither contention is well taken. We have not held that equity lacks power to deal with such demands, but that no such demands are present in this suit.

The *Blair* case appeared in appellant's brief without further argument, and for the proposition that "equity takes jurisdiction of the accounting in a joint venture." No more than this was claimed for it. It decides merely that, where a contract between parties has been established or admitted, and there remains thereunder a series of calculations which are necessary to the establishment of the rights of the parties, the court *can* order a compulsory reference. The calculations referred to are a series that must be made before profits of a joint venture can be determined, and they are of such nature that they and other matters connected therewith "can be much better made and ascertained by a competent referee than by a jury of twelve persons not versed therein." The most that is held is that in such circumstances the court has power to order a reference. It lies on the very surface that no such calculations are involved in the case at bar. We adhere to the construction we have given *Burt v. Harrah* in the original opinion, and, so construed, we have done nothing to reverse that case. It is not amiss to repeat that we have never held that, though a reference was due on equitable issues presented by a defendant, and he does not ask this, but asks that the whole case, including matter triable to a jury, be transferred, he can complain of the denial of his motion, no matter how true it may be that he was entitled to have the reference.

III. Plaintiff asked an order that defendant produce a certain account, but the opinion states it the other way round. It is now said that "the conclusion, if of any importance to the case, necessarily becomes erroneous when based upon this hypothesis." Further, that this is mentioned merely "to show the inaccuracy into which the court fell in urging this matter." The statement in the opinion was an error, but the error effectuates nothing beyond showing that the state of the record made it quite possible to fall into error. The mistake can have no effect upon the appellate

decision.    The petition for rehearing must be overruled.—
*Overruled.*

EVANS, C. J., and GAYNOR, J., concur.

LADD, J., concurs in overruling the petition for rehearing,
but thinks that there is no occasion for filing the supple-
mental opinion.