W. H. RICHMAN, Appellant, v. E. O. RICHMAN, Appellee.

PARTNERSHIP: Accounting. He who demands accounting by an
1    alleged partner must show that the contract between them contemplated a mutual sharing of the profits and *losses.*

ACCOUNTING: Nonmutual Demands—Equity Jurisdiction. Equity is
2    not given jurisdiction from the mere fact that an action involves an examination of a multitude of transactions and of large numbers of debit and credit items. There must be *mutual* demands.

*Appeal from Poweshiek District Court.*—D. W. HAMILTON,
Judge.

DECEMBER 21, 1920.

ACTION for an accounting. The court held that no partnership existed, and denied accounting, and dismissed plaintiff's petition.—*Affirmed.*

*Talbott & Talbott,* for appellant.

*U. M. Reed,* for appellee.

ARTHUR, J.—This action was instituted in equity for an accounting, under an alleged oral contract between the parties for an equal division of the profits realized by both from the sale of automobiles. The issue or proposition presented to the lower court and to this court is whether or not, under the pleadings and evidence, appellant is entitled to an accounting upon either of the

1. PARTNERSHIP:
   accounting.

two theories which he urges:    (1) The existence of a partner-
ship; or (2) mutuality of account.

Appellant is appellee's uncle.    Appellant owns a brick
mercantile building in Brooklyn, Iowa.    The building is about
50 feet wide and 80 feet long, and is divided into three rooms,
two small rooms facing Jackson Street, and one room in the rear.
One of the front rooms was used by appellant for the storage
and sale of automobile accessories; the other front room was
used for exhibiting automobiles; and the rear room was used
by appellee as a repair shop.    For some months before Febru-
ary, 1916, the appellee was employed by the appellant as a me-
chanic, and worked only for wages.    Some time in the early
part of 1916, the appellee became a subagent for the sale of
Saxon cars.    Appellant had the agency for the Empire automo-
bile.    Some time in the spring of 1916, appellant and appellee
discontinued the relation, and made an arrangement by the
terms of which each was to have the use of appellant's building,
and each was to continue the agency for cars, and the appellee
was to have charge of the repair room and do repair work.    So
far the parties agree.

The parties disagree as to further terms of their contract.
Appellant claims that the proposition which he made to, and
which was accepted by, appellee was that each one should
furnish the money for the cars which he bought and handled,
and that they would divide the profits on the cars sold by both;
that the appellee should have the use of the repair shop, doing
work on appellant's individual car and on any cars that were
sold by both; that appellant was to run the accessory business
himself, and the appellee was not to have any interest therein.
Appellant claims no interest in the repair shop, excepting that
appellee was to keep his automobile, and those sold by him, in
repair.

Appellee claims that nothing at all was said about dividing
profits on cars sold, but that he (appellee) was to furnish what
service was needed to keep the cars which appellant sold in
running shape, and for that he was to have the use of the build-
ing for his repair shop.

To determine the issue of partnership, the court must ascer-
tain the terms of the agreement between them, and the legal

effect of such terms. The testimony on that point is short. We have only the testimony of the parties. Appellant testifies:

"We were to sell cars together, and divide the profits. Each one was to furnish his own money for his cars. I was to furnish money to buy an Empire, and Earl, for the Saxon car. Then we were to divide the profits. Nothing was said about loss."

Appellant was asked the direct questions:

"Q. There wasn't any agreement that you should share any losses, if there should be any? A. No, sir. Q. You were just to share the profits? A. Yes, sir."

Appellee testified:

"He made the proposition that I come in partnership with him on the new cars, and sell them together. I turned down the proposition. I couldn't give you the exact words, but I refused. He said we would each sell our own cars; he would sell the Empire, and I would sell the Saxon. Nothing said about the profits. Nothing said about dividing the profits. I acquired the agency for the Lexington car later. Talked with plaintiff about it at the time, just in regard to the appearance of the car. Nothing said about who should have the profits on the Lexington cars. Plaintiff did not furnish any of the money to purchase the cars for which I had the agency. Never had any contract with plaintiff for any division of the profits on sale of cars sold by me."

In order to have an accounting upon the theory of the partnership relation, it was incumbent upon appellant to establish the fact that there was a partnership. To prove partnership, it was necessary to prove that both parties had agreed to share the losses, as well as the profits, of the undertaking. Appellant admits that there was no agreement to share the losses. His only claim is that they were to share the profits on the sale of cars that both handled. It appears without dispute that each party was to buy the cars he handled, with his own money.

Participation in both the profits and losses in a joint business or undertaking affords the usual and perhaps the most cogent test of the existence of an intention to form a partnership.

In *Winter v. Pipher & Co.*, 96 Iowa 17, it is stated:

"It is true that there are cases which hold that a community of interest in profits is sufficient to constitute a partnership. But this court is committed to the doctrine that there must be a sharing of the losses."

In *Ruddick v. Otis & Snow*, 33 Iowa 402, it is said that:

"No doctrine of the law is better settled than that a mere participation in the profits does not constitute a partnership in respect to the concern or adventure from which the profits arise."

The rule above announced has been uniformly adopted by this court. *Porter v. Curtis, Morris & Diver*, 96 Iowa 539; *McBride v. Ricketts*, 98 Iowa 539; *Richardson & Co. v. Carlton*, 109 Iowa 515; *Haswell v. Standring*, 152 Iowa 291; *Francis v. Francis*, 180 Iowa 1191, 1209; *McCarney v. Lightner*, 188 Iowa 1271.

There is no evidence in this case, as to the manner of conducting the business, which authorizes a finding that there was a partnership between these parties. There is no partnership claimed by appellant, except as to the sale of cars. It appears without dispute that each party was to buy its own cars that he kept for sale, and pay for them out of his own funds. Appellant does not claim that, if any loss occurred, he and appellee were to share in the loss. His claim is that they were to share equally only in the profits from the sale of the cars that both of them handled.

It is the further contention of the appellant that it is not necessary that a partnership relation be shown; that there are other grounds of equitable jurisdiction to order an accounting; and that, if it appear that there are mutual accounts to be adjusted between the parties, then a court of equity will take jurisdiction to order an accounting and render judgment for any balance found due.

2. ACCOUNTING: nonmutual demands: equity jurisdiction.

The question of whether certain accounts involved in an action were cognizable in equity has been before this court in several cases. In *Marks Hat Co. v. Slatnik*, 178 Iowa 370, plaintiff brought an action on an account, alleging the sale of merchandise set out in an itemized account, amounting to

$21,382.80, on which payments were credited in the amount of $16,688.68, leaving a balance of $4,694.12, for which judgment was demanded. The defendant admitted that all the items had been purchased by him, and that all payments had been credited, but alleged that he entered into an oral agreement with the plaintiff, by the terms of which the plaintiff undertook to furnish him hats and fur caps at the factory price, plus $1.50 per dozen, and Panama hats at the factory price plus $3.00 per dozen, and to allow plaintiff a 6 per cent discount off all bills as these were paid; that plaintiff had omitted to allow discounts in the sum of $1,174.75, and made overcharges amounting to $3,572.36. After issue was thus joined, the plaintiff moved that the cause be transferred to equity, and set forth as grounds that:

"An equity accounting is necessary, which said accounting involves a detailed statement of account extending over a long period of years, and several thousand separate and distinct items of a very small amount."

The motion to transfer to equity was overruled. The court said:

"The law is well settled that, when the trial exacts the examination of complicated mutual accounts, the cause may properly be transferred to the equity side. * * * But where the account is on one side only, or where there are no mutual demands, but merely payments pleaded by way of set-offs, the case is not cognizable in equity."

Supporting this rule, see, also, *McMartin v. Bingham*, 27 Iowa 234; *District Twp. of Grant v. Bulles*, 69 Iowa 525; *Mitchell v. Beck*, 178 Iowa 786.

It is well settled that, where there are no mutual demands, the case is not cognizable in equity. See cases above cited.

There does not seem to have been a large number of cars sold by the parties, and there are but few transactions involved. However, a large number of transactions and a large number of debit and credit items, which could be more conveniently tried to the court, do not constitute a ground of equitable jurisdiction. *Williams v. Herring*, 183 Iowa 127; *Fleener v. Nugent*, 185 Iowa 701; *Mitchell v. Beck*, 178 Iowa 786.

We conclude that this cause presents no issue cognizable in equity, and that the court was correct in dismissing the action. The decision of the court is—*Affirmed*.

WEAVER, C. J., LADD and STEVENS, JJ., concur.